IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| | | |
|---|---|---|
| MYRON WILLIS, CHARLOTTE WILLIS FOXWORTH and ERICK MICHAEL JACKSON, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| vs. | ) ) | Case No. 06-3001-CV-S-ODS |
| J.T. ROBERTS, Individually and in his Official Capacity as Sheriff of Pulaski County, Missouri, and PULASKI COUNTY, MISSOURI, | ) ) ) ) ) | |
| Defendants. | ) ) | |
| _____ | ) | |
| ERICK MICHAEL JACKSON, Individually and as Personal Representative of the Estate of Earl Foxworth, Jr., | ) ) ) ) ) | |
| Plaintiff, | ) ) | |
| vs. | ) ) | |
| J.T. ROBERTS, Individually and in his Official Capacity as Sheriff of Pulaski County, Missouri, and PULASKI COUNTY, MISSOURI | ) ) ) ) ) | |
| Defendants. | ) | |

ORDER AND OPINION (1) GRANTING IN PART AND DENYING IN PART
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND (2) DENYING
PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

This suit is the consolidation of what were originally two separate suits following

Earl Foxworth, Jr.'s incarceration and subsequent death. Both suits allege Defendants

were deliberately indifferent to Foxworth's serious medical need. One suit alleges the

deliberate indifference caused Foxworth's death and is brought by those statutorily

entitled to bring a wrongful death action; the other suit alleges the deliberate

indifference did not cause Foxworth's death and is asserted as a survival action by his estate's representative. Those bringing the suit (collectively, "Plaintiffs") seek partial summary judgment on liability; Defendants seek summary judgment (1) based on qualified immunity and (2) on the merits. Plaintiffs' request (Doc. # 70 & Doc. # 81) is denied; Defendants' motion (Doc. # 72) is granted in part and denied in part.

## I. DEFENDANTS' ARGUMENTS

Defendants' claim of qualified immunity should be addressed first, and for ease of discussion the Court will simply address all of Defendants' arguments before addressing Plaintiffs' request. When construed in Plaintiffs' favor, the Record (along with all undisputed facts) demonstrates Foxworth was booked into the Pulaski County Jail ("the Jail") on March 30, 2004. Defendant J.T. Roberts was the Sheriff of Pulaski County and was acquainted with Foxworth prior to March 30. Roberts saw Foxworth the day he was booked and observed his stomach was swollen and distended. Roberts Dep. at 49. One of Foxworth's sons raised concerns about his father's health and suggested he needed to be seen at a hospital, but the officer he talked to indicated he could not take action without Roberts' approval. The officer later told Foxworth's son Roberts "would not authorize" medical help because "there was nothing wrong" with Foxworth. Willis Dep. at 82-83.[1]

Dr. Benny Thomas has been retained to provide medical services to inmates at the Jail. Inmates were transported to see him on an "as-needed" basis, but he does not know how the "need" is determined or who determines it exists. Dr. Thomas saw

---

[1]Other relatives spoke with Roberts about Foxworth's condition, but the content and timing of these conversations is unclear. These conversations undoubtedly addressed Foxworth's condition in a general manner because it was known to all concerned – including Roberts – that Foxworth had a history of health problems stemming from his military service during the Vietnam War and his abuse of alcohol and drugs. However, the pertinent inquiry is whether Roberts had reason to know Foxworth had a then-existing serious medical need, not what Roberts knew about Foxworth's health generally. The conversation mentioned in the body of this Order is the only one that clearly related to Foxworth's then-current condition.

2

Plaintiff on April 28, 2004, and opined that Foxworth "needed to be in the hospital and not on the jail and that he should be hospitalized." Thomas Dep. at 13. Jail personnel brought Foxworth back to Dr. Thomas the next day, thereby demonstrating Foxworth was not hospitalized on April 28. Dr. Thomas again indicated Plaintiff needed to go to the hospital. Thomas Dep. at 13. At some point on one of those two days Dr. Thomas called Roberts personally to communicate the information. Thomas Dep. at 21.[2] Upon receiving the call from Dr. Thomas, Roberts "called our prosecutor and told her that [Foxworth's] condition had worsened." Roberts Dep. at 69. At approximately 3:00 p.m., Foxworth's attorney and the prosecutor jointly filed a Motion for Release on Defendant's Own Recognizance. Defendant's Exhibit F. Foxworth was released from the Jail sometime that day, and at approximately 10:20 p.m. was seen at the emergency room at the Phelps County Regional Medical Center. He was "discharged to home" at an unstated time with instructions to "follow up with family doctor" and to return if he experienced "an increase in his shortness of breath or chest pain." Defendants' Exhibit K at 314, 326. Foxworth was admitted to the Phelps County Regional Medical Center from May 6 to May 19.

Foxworth died on May 30, 2004, due to gastrointestinal hemorrhage. At the time of his death he was suffering from liver disease caused by alcohol use, abnormal kidney function, and hepatitis C. Post mortem examinations revealed Foxworth had disobeyed his doctor's warning to refrain from drinking alcohol, and this may have led to the hemorrhage. Plaintiff's expert, Dr. Sandral Hullett, testified Plaintiff's condition was progressive and treatment would have improved his quality of life. However, she could not state, to a reasonable degree of medical certainty, that treatment while detained would have prevented Plaintiff's death on May 30. Hullett Dep. at 31-32, 85-86. Dr. Hullett opined earlier treatment "could have slowed" the progression of Foxworth's disease and possibly prevented his death (despite his ill-advised alcohol consumption), but she could not say the possibility rose above a reasonable degree of medical certainty.

---

[2]The Record does not specify when Dr. Thomas called Roberts.

3

A.  Qualified Immunity

Roberts contends he is entitled to qualified immunity.  A two-step inquiry is used to analyze claims of qualified immunity.  First, the Court must determine whether the Record, viewed in the light most favorable to the Plaintiffs, shows the state official violated a constitutional right.  If a violation can be demonstrated, the Court must then determine whether the right was clearly established in the specific context of the case. Plemmons v. Roberts, 439 F.3d 818, 822 (8th Cir. 2006).

The Fourteenth Amendment grants pretrial detainees "protections at least as great as those the eighth amendment affords a convicted prisoner."  Boswell v. Sherburne County, 849 F.2d 1117, 1121 (8th Cir. 1988).  A prisoner's Eighth Amendment right to medical care is violated when officials are deliberately indifferent to the prisoner's serious medical needs.  E.g., Plemmons, 439 F.3d at 823.  "To establish deliberate indifference, a prisoner must prove he had objectively serious medical needs and the official actually knew of but deliberately disregarded those needs."  Meloy v. Bachmeier, 302 F.3d 845, 848-49 (8th Cir. 2002); see also Robinson v. Hager, 292 F.3d 560, 564 (8th Cir. 2002).  A medical need is serious if it is either obvious to a layman or is supported by medical evidence, such as a doctor's diagnosis or recommendation. Aswegan v. Henry, 49 F.3d 461, 464 (8th Cir. 1995).

The Record does not specify when Dr. Thomas talked to Roberts, but viewing the Record (and inferences therefrom) in the light most favorable to Plaintiff requires the Court to assume that, on April 28,[3] Dr. Thomas told Roberts that Foxworth needed to be in the hospital.  Instead of transporting Foxworth to the hospital, Roberts contacted the prosecutor, advised her of Foxworth's condition, and suggested Foxworth be released so the Jail would not have to bear the cost of Foxworth's medical care.  This prompted

_____

[3]It may be that Dr. Thomas told other jail personnel Foxworth needed to be hospitalized on April 28, but they were unable to comply because of a policy requiring Roberts' personal approval – which led to Foxworth's subsequent visit to Dr. Thomas on April 29 and Dr. Thomas' personal call to Roberts.  This rendition of facts also militates against granting summary judgment to Defendants.

4

the prosecutor to agree to the motion for Foxworth's release on his own recognizance. Plaintiff can demonstrate a motive for such actions based on Roberts' testimony that Pulaski County Commissioners often complained about the Jail being over budget for medical expenses. Roberts Dep. at 20-23. Finally, Defendants' expert testified Foxworth's "quality of life" would have been improved if he had been taken to the hospital, and Roberts had been told by a doctor that Foxworth needed to be in the hospital.

The Court does not intend to suggest the preceding represents the true facts of the situation; that determination will have to be made by a jury. These facts can be gleaned when the facts are viewed in the light most favorable to Plaintiff, and in that light they demonstrate a constitutional violation. Therefore, the Court must consider whether the constitutional right was clearly established. Cases establishing a pretrial detainee's right to medical care are legion. E.g., City of Revere v. Massachusetts Gen. Hosp., 463 U.S. 239, 244-45 (1983); Spencer v. Knapheide Truck Equip. Co., 183 F.3d 902, 905-06 (8th Cir. 1999). A pretrial detainee's right to medical care that is deemed necessary by a physician has been well-established for a long period of time, so Roberts is not entitled to qualified immunity.

## B. The County's Liability

Local governments are not liable under § 1983 based solely on a theory of respondeat superior. To be held liable, the locality must have either adopted an unconstitutional policy or permitted an unconstitutional practice to become widespread. Defendant Pulaski County contends it is entitled to summary judgment because Roberts testified that he provides "inmates with the necessary medical care without regard to budgetary restrictions set by the County Commission." Defendants' Suggestions at 73. This is a possible inference from Roberts' deposition testimony – but the Court must focus on the inference that is most favorable to Plaintiffs. Viewed in that light, the County's budgetary restraints and complaints to Roberts about his excessive expenditures for detainees' medical care lends support to the existence of a policy,

5

practice or custom that deprives detainees of the medical care they are constitutionally entitled to receive. Based on the present record, the Court cannot conclude the County is entitled to judgment as a matter of law.

## C. The Merits

Finally, Defendants argue they are entitled to judgment on the wrongful death claim. The Court agrees. When viewed in the light most favorable to Plaintiffs, the Record does not demonstrate Defendants' alleged constitutional violations caused or hastened Foxworth's death. Cf. Brown v. Bailey, 210 S.W.3d 397, 407 (Mo. Ct. App. 2006); Collins v. Hertenstein, 90 S.W.3d 87, 96 (Mo. Ct. App. 2002) (discussing causation for wrongful death purposes). None of the experts are prepared to offer an opinion favoring Plaintiffs; at best, they establish Foxworth's "quality of life" would have improved, but none will opine that his life was shortened in any way.

This leaves a claim Foxworth would have been able to assert if he had not died. Missouri law dictates that this claim survived his death and may be asserted by his personal representative on behalf of the estate. Andrews v. Neer, 253 F.3d 1052, 1056-57 (8th Cir. 2001).

## II. PLAINTIFFS' ARGUMENTS

Plaintiffs seek summary judgment on the issue of liability, contending Roberts admitted observing Foxworth on March 30 and noting he suffered from a swollen or distended stomach. There is support for this proposition, see Roberts Dep. at 49, but for purposes of Plaintiffs' motion the Record must be viewed in the light most favorable to Defendants. Viewed in that light, Roberts only saw Foxworth on the day he was released and he made no prior observations of Foxworth's stomach. Roberts Dep. at 68. It is not clear that such an observation by a layman would demonstrate a serious medical need. Finally, the precise content of the conversation(s) between Dr. Thomas

and Roberts has not been established; without more information, the Court is unable to conclude the uncontroverted facts in the Record demonstrate Defendants' liability.

## III.  CONCLUSION

For these reasons, the Court grants in part and denies in part Defendants' Motion for Summary Judgment, and grants Defendants' judgment on the wrongful death claim. Plaintiffs' Motion for Summary Judgment is denied.

IT IS SO ORDERED.


/s/ Ortrie D. Smith
ORTRIE D. SMITH, JUDGE
DATE: November 20, 2007            UNITED STATES DISTRICT COURT